THE ÆTNA LIFE INSURANCE COMPANY

*v.*

MARY S. SANFORD.

*Opinion filed December 16, 1902.*

1. WAIVER—*the matter of waiver is a mixed question of law and fact.* What facts will constitute a waiver is a question of law, but whether such facts exist in a particular case is a question of fact.

2. INSURANCE—*a policy does not lapse if time for paying premium is extended.* If the time for paying the premium on a life insurance policy is extended the policy does not lapse, and if the premium is paid within the extended period it is not necessary that the insured be in good health at the time or that he sign a certificate to that effect, as is required in the case of renewing lapsed policies.

*Ætna Life Ins. Co.* v. *Sanford,* 98 Ill. App. 376, affirmed.

WRIT OF ERROR to the Appellate Court for the Second District;—heard in that court on appeal from the Circuit Court of Grundy county; the Hon. H. M. TRIMBLE, Judge, presiding.

E. L. CLOVER, and WOOD & OAKLEY, for plaintiff in error.

SAMUEL RICHOLSON, and HAROLD L. RICHOLSON, for defendant in error.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

Edward Sanford, of Morris, Illinois, held a policy of insurance upon his life, issued by the Ætna Life Insurance Company, plaintiff in error, for $5000, payable to his wife, Mary S. Sanford, defendant in error, within ninety days after due notice and proof of his. death. He died March 18, 1900, and the defendant in error brought an action of debt in the circuit court of Grundy county against the plaintiff in error to recover the amount of the policy. The defendant pleaded the general issue, and upon the trial, at the close of the evidence offered by the plaintiff, tendered to her $2680 and costs of suit, which tender was refused and the amount was deposited with the clerk of the court. There was a verdict for the plaintiff for $4924.32, and judgment was entered on the verdict. The Appellate Court for the Second District affirmed the judgment, and a writ of error was sued out to review the judgment of the Appellate Court.

The policy was dated March 7, 1876, and the annual premium was $132.10, payable on February 10 of each year, with a provision that the policy should cease and determine if any premium should not be paid on or before the day it became due. The insured paid the first premium when the policy was issued, and twenty-three subsequent premiums, up to the one due February 10, 1900. The last of December, 1899, he and his wife went to Mexico, and he left his business in the care of a son, Frank Sanford, with no instructions in regard to the payment of insurance premiums which might fall due. On January 30, 1900, the defendant's agents in Chicago sent a notice

by mail to the insured at Morris, Illinois, informing him
that the premium would be due on February 10, 1900.
He held another policy for $500 which was paid up, the
surplus of which was annually applied on the premium
of the policy in question.   The notice gave him credit
for $3.62 for this surplus, and stated the amount due to
be $128.48.   In reply to that notice, Frank Sanford on
February 5 wrote the following letter to the defendant:

"E. Sanford, Attorney, Morris, Ill.

"*The Ætna Life Ins. Co., No. 225 Dearborn St., Chicago,Ill.:*

"GENTLEMEN—Yours received, saying that Mr. Sanford's in-
surance is due on the 10th of this month. He is in Mexico and
will not return until the first of March, and has left no order
with me for the payment of the same, or, in fact, said nothing
about it.   Will you please inform me just what the amount is
that will be due, and if it will be necessary for it to be paid on
that date or if it can wait until he returns and then be paid.
Please let me know what your rules are in regard to this, and
oblige.   You see it would be impossible for me to get any word
to him and an answer back by this date.

"Very truly yours,        FRANK SANFORD."

To this letter defendant sent the following reply, en-
closing therewith a note dated February 10, 1900, due
on or before April 10, 1900, for $129.76, the amount of the
premium and interest, for sixty days, which stated on
its face that it was given to extend the time of payment
on the policy:

"*Mr. Frank Sanford, Morris, Ill.:*        "*February 8/00.*

"DEAR SIR—We enclose herewith a note for an extension of
sixty days on the premium under policies Nos. 113,514 and 26,071,
E. Sanford.   We suggest that you sign these notes for E. San-
ford, and in the meantime you can communicate with him and
learn what his wishes are.

(Enc.)     ·        "Yours truly,   IRA J. MASON & SON, *Managers.*"

On February 10 Frank Sanford signed the note in his
own name and also signed his father's name to it.   It
was Saturday evening and the mail was closed, and he
entrusted the letter to a brother to mail.   The brother
mailed it on his return to Chicago, Monday, February 12,

by depositing the letter in the United States mail-box in the Rock Island depot. The note and letter were never received by the defendant. The insured returned home on February 27, 1900, and on March 10 wrote to defendant the following letter:

"E. Sanford, Attorney, Morris, Ill.

*March 10, 1900.*

*"Ira J. Mason, Esq., Agent Ætna Life Ins. Co., Chicago:*

"DEAR SIR—Upon my return from Mexico I find your letter stating that the premium on my policy No. 26,071 was due on February 10, 1900, but you kindly extended the payment thereof sixty days. Please accept my thanks for the courtesy, and I herewith enclose you Chicago draft for $130, not knowing just what the exact premium will be and supposing there will be some interest added thereto. If this is not enough please inform me immediately and I will remit; if too much, you may credit the balance on the policy, or return, as you see fit.

"Yours truly,        E. SANFORD."

This letter contained the draft for $130 therein mentioned. On March 10, 1900,—the same day on which the letter was written enclosing the draft,—the defendant sent a letter to the insured, informing him that if he desired to revive the policy which had lapsed, he should sign and return the enclosed Form No. 22, together with premium, within thirty days. Form 22 recited that the policy had lapsed for non-payment of premium due February 10, and that the signer, for the purpose of obtaining its revival, certified that he was in good health and that there was nothing in his condition likely to impair his health and shorten his life, and it was agreed that if anything therein represented should be untrue the policy should be treated as if it had not been revived. The letters passed each other in the mail and were each received on March 12. On that day defendant's agents acknowledged receipt of the draft and enclosed another Form 22, with request to sign it, and on March 17 again wrote the insured to return Form 22, signed. The insured was ill during the time of this correspondence after his return

200—9

home, and he died on March 18, 1900. The draft was returned March 28, 1900, with an offer to pay $2680, the amount for which a paid-up policy would have been issued if it had been applied for.

The controverted question in the case is whether there was a waiver by the defendant of the provision in the policy that it should cease and determine if the premium should not be paid on or before February 10, 1900. The trial court and Appellate Court found that there was such a waiver by an agreement to extend the time of payment for sixty days. It is insisted that the finding was against the weight and preponderance of the evidence, and an argument is addressed to us on that subject. What facts will constitute a waiver is matter of law, but whether the facts exist in any given case is a question of fact. The findings of the Appellate Court are conclusive on questions of that character. *Moerschbaecher* v. *Royal League,* 188 Ill. 9.

The only questions of law open in this court relate to the instructions. In two instructions submitted by defendant the rule of law was stated that the policy would lapse and the defendant would not be liable if the premium was not paid on or before the 10th day of February, unless payment of it was waived. The court added to one instruction, "or that the time for the payment of it was extended," and to the other, "or the time of payment is extended by the defendant or by the defendant's recognized agents." The modifications of these instructions are the ground of complaint, and it is insisted that there was no evidence on which to base a modification, and that the jury would understand that in the opinion of the court there was some evidence of that fact. There was no claim or pretense that the premium was not to be paid or that there was a waiver of payment, but the controversy was over the question whether the payment at the specified time was waived. The question was whether the defendant could insist upon a forfeiture by reason of

the non-payment on or before the day the premium fell due. The question of waiver related to compliance with the terms of the policy in respect to time of payment, and there is no distinction between that question and the question whether the time of payment was extended. The evidence on the part of the plaintiff tended to show that the time for payment was extended sixty days. The letter of February 8, enclosing the note, suggested that Frank Sanford, who signed the note, should communicate with his father and learn what his wishes were. It was well understood by all parties that Frank Sanford was not authorized to act in the matter as the agent of his father. While he might, and as the evidence shows would, have paid the premium from his own means to prevent a forfeiture, he was not required to do so, but was directed to communicate with his father and learn what his wishes were, and the question whether the policy should be continued in force was left to his father. There was evidence upon which to base a modification. There being an extension of time of payment the policy had not lapsed; and the defendant had no right to an admission of that fact, nor that the insured should sign Form 22, which was only required where a policy had, in fact, lapsed. The policy being in full force under the extension, it was not necessary that the insured should be in good health when the premium was paid, or that he should furnish evidence of the fact.

The seventh instruction asked by the defendant was modified by the court so as to state as a rule of law that it was sufficient delivery of the note that it was delivered to some person by the maker, or by his agent, for transmission to the payee. The modification was erroneous as undertaking to state what would constitute a legal delivery of a note. But the question of whether there was such a delivery was not a material question in the case. The note, if delivered, was not to operate as payment or an extension of payment. The question

whether the policy was to be kept alive by payment within sixty days, as understood by both parties, was left to the insured. When he should be communicated with his wishes were to be ascertained, and he was to have an option to keep the policy alive. An attempt was made, in good faith, to deliver the note, and we do not think the extension would be avoided by a failure to make a legal delivery. The modification of the instruction, in view of the evidence, was not harmful to the defendant.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*