(No. 29339.—

THE PEOPLE *ex rel.* Bradford Supply Company, Inc., Petitioner, *vs.* THE CIRCUIT COURT OF PULASKI COUNTY *et al.,* Respondents.

*Opinion filed March 20, 1946—Rehearing denied May 16, 1946.*

WHAM & WHAM, of Centralia, and HENRY I. GREEN, and ORIS BARTH, both of Urbana, for petitioner.

DOROTHY WILBOURN, and ASA J. WILBOURN, both of Cairo, and JOE CRAIN, of Mound City, for respondents.

Mr. JUSTICE MURPHY delivered the opinion of the court:

This is an original action in *mandamus* instituted to command respondent Bradley, as judge of the circuit court of Pulaski county, to enter a decree in a cause pending in said court, entitled "Bradford Supply Co. Inc., a corporation, v. R. G. Williams, Trustee, Walter W. Waite et al., No. 3645." This is the third time the parties to this action have been before this court on some phase of the litigation involved in said cause. (*People ex rel. Waite* v. *Bristow,* 391 Ill. 101; *Braford Supply Co. Inc.* v. *Waite,* 392 Ill. 318.) Reference is made to those decisions for a full statement of the facts. The statement of facts here will be limited to such as are necessary to show the contentions of the parties.

In March, 1941, petitioner entered into a contract whereby it agreed to furnish material and labor in the drilling of an oil well on a 40-acre tract of land located in Pulaski county. After certain material was furnished and labor performed, the contract price was not paid and in August, 1942, petitioner started an action (No. 3645) under the Oil and Gas Wells Lien Act, (Ill. Rev. Stat. 1945, chap. 82, par. 71 *et seq.*) to enforce a lien against the 40 acres on which the oil well was drilled. It was

alleged that W. L. Richey owned the premises when the contract was made and that R. G. Williams, trustee, Herbert S. Duffy and Walter W. Waite were lessees holding an oil-and-gas lease on the premises. It was further alleged that the contract had been performed by the Bradford Supply Company and that the sum of $1115.56 was due and unpaid. The owner, W. L. Richey, and the persons named as holders of the oil-and-gas leases were named as defendants.

It is not necessary to note the action taken by any of the defendants except Walter W. Waite. On September 21, 1942, he filed an answer, and July 8, thereafter, filed what he designated as a "cross complaint." Two days after the cross complaint was filed, William Phillips and Edward Stewart obtained leave to intervene. They claimed a lien for labor and services furnished in the removal and salvage of the pipe which was the same pipe petitioner had furnished, and for which it claimed a lien. After issues were formed on petitioner's complaint, the Phillips-Stewart intervening petition, and Waite's counterclaim, a hearing was had on the two claims first mentioned. This occurred September 11, 1943. A part of an entry on the judge's minute book of that date is as follows: "It is stipulated that no claim is being made for a mechanic's lien against Walter W. Waite made a defendant in this cause." The minute-book entry contained a recital that the court found that Bradford Supply Company had contracted with defendant R. G. Williams to furnish material and labor, and that there was due it from Williams the sum of $1108.46. The following notation was entered: "Decree for mechanic's lien as per signed order on file." It is conceded that no such signed order was presented to respondent to be filed. On the same date a further entry was made in reference to the Phillips-Stewart claim. It shows that Bradford Supply Company owed Phillips-Stewart $560.

The record before us does not disclose that any action was taken on the Waite counterclaim at the time petitioner's claim and the Phillips-Stewart claim were heard. An entry on the judge's minute docket, under date of October 27, 1943, and continued to October 28, shows that on those dates Waite's claim as set forth in his counterclaim was tried before a jury and that a verdict was returned in favor of Waite and against Bradford Supply Company. On November 5, Bradford Supply Company filed a motion for judgment notwithstanding the verdict and a motion for a new trial. On November 9, a minute was entered that both motions were overruled and "judgment on the verdict in favor of the plaintiff W. Waite and against the defendant Bradford Supply Company, Inc., a corporation, in the sum of $37,500 and costs. Supersedeas bond fixed at $75,000 to be approved as to surety by the clerk of this court."

Petitioner contends that its action to enforce the mechanic's lien was in equity and that the Phillips-Stewart claim and Waite's counterclaim arose out of the contract which furnished the subject matter of petitioner's claim. Petitioner also calls attention to the fact that the Phillips-Stewart claim and Waite's counterclaim were both filed under the same title in cause No. 3645, and that in view of such procedure relating to the same subject matter, the three causes of action should be treated as equity matters and that the judgment or decree entered should be according to established rules of chancery practice. On this hypothesis petitioner invokes the rule of chancery practice, as it existed prior to the adoption of the Civil Practice Act, that orders determining issues raised on original bills or cross bills which are entered before the issues are settled on other pleadings, are interlocutory and remain so until the issues on all the pleadings have been determined. The law under the former practice was that a decree entered

in a chancery matter which included issues raised on the original bill and cross bill should be included in a single decree and that a decree so entered was final and appealable, and an appeal therefrom brought the whole record before the reviewing court. *Village of Harlem* v. *Suburban Railroad Co.* 202 Ill. 301.

The prayer of the petition is that a writ of *mandamus* issued commanding respondent Bradley as judge to enter a decree combining the interlocutory findings made on petitioner's claim for lien and the Phillips-Stewart claim with a finding and judgment on the Waite counterclaim. Although it is claimed that petitioner is entitled to have a final decree on its lien claim, the underlying purpose of this proceeding is to combine all findings, including Waite's counterclaim, in a single decree, the same to be treated as a final, appealable judgment. It is argued that if this were allowed, petitioner would have the right to appeal from such final judgment. Reference to the *Bristow* and the former *Bradford Supply Company* opinions will disclose that petitioner undertook to obtain a review of the judgment entered on Waite's counterclaim on November 9, 1943, but for reasons stated therein was not successful in either case.

It was held in the *Bristow case* that the entry in the judge's minute book on November 9, 1943, constituted a final judgment of the court and all that remained to be done was for the clerk to perform the ministerial duty of extending the minutes into a formal judgment on the record.

Respondent Bradley concedes that no decree was signed in reference to the findings of September 11, entered on petitioner's claim for lien and the Phillips-Stewart claim. He states in his answer that he has always been ready to sign such a decree if presented. Said respondent contends that the entry on the judge's minute book of November 9, 1943, has been declared by this court to be a final judgment, and that it is an action at law separable from the actions to enforce a lien.

The pertinent parts of the complaint filed by petitioner to enforce its lien have been stated. The allegations contained in Waite's answer to petitioner's complaint and in his counterclaim which are material to this inquiry are substantially as follows: In the answer Waite denied he entered into a contract with petitioner, that he was the owner or lessee of the premises described in the complaint, or that the materials were furnished as claimed. It was alleged "that the materials furnished by the plaintiff [petitioner' herein] to the defendant R. G. Williams, trustee, were misrepresented and defective and that plaintiff fraudulently concealed such defects." The substance of the counterclaim was that Waite owned oil-and-gas leases on lands adjoining the 40-acre tract on which the oil well was drilled, that at the time of making the contract the area covered by his leases had not been tested for oil or gas, that the geological survey showed formations of strata on which there was oil, and that, in view of having it determined that there was oil in that vicinity, he contributed a large amount of money to develop a test well on the 40-acre tract. It is alleged that the well drilled on the tract pierced oil-bearing formations but by reason of defects in the pipe furnished by petitioners, it was impossible to exclude the water from the oil strata, thereby forcing an abandonment of the well. It was alleged that petitioner's contract with Williams, trustee, required it to furnish pipe suitable for the purpose of drilling said well, that it agreed to furnish a first grade, second-hand pipe, that such pipe was to withstand a pressure of 2000 pounds. It was alleged that the pipe so furnished "was defective, containing small leak holes in the sides thereof, said pipe was decayed and unfit for the purpose for which it was furnished; that to conceal the said defects from this defendant and other parties interested in the oil well, the Bradford Supply Company, Inc., fraudulently and deceitfully covered said pipes with a coating of black paint or other black material;

that said defects were not known until after said pipes were driven in said well."

Section 16 of the Oil and Gas Wells Lien Act provides that the practice, pleadings and proceedings in cases instituted under the act to enforce a lien, shall, insofar as applicable, conform to the provisions of the Civil Practice Act.

Section 38 of the Civil Practice Act (Ill. Rev. Stat. 1945, chap. 110, par. 162,) provides that subject to rules "any demand by one or more defendants against one or more plaintiffs, or against one or more co-defendants, whether in the nature of set-off, recoupment, cross-bill in equity or otherwise, and whether in tort or contract, for liquidated or unliquidated damages, or for other relief may be pleaded as a cross-demand in any action."

The statute is broad and designed to extend the filing of counterclaims to include subjects which were not permitted to be filed by setoff, recoupment or cross bill under the former practice. There is no requirement of statute that the original demand and the counterclaim shall be of the same character. They may be legal, equitable, or both. Nor is it necessary to observe the distinction that formerly existed as to recoupment, which required that the demand should arise out of the same transaction as plaintiff's demand. Under this statute, counterclaims may be filed by a defendant against the plaintiff or a codefendant without regard to the effect it may have upon plaintiff's demand.

The extension of the right to file counterclaims of such wide variety necessitated a change in the entering of judgments or decrees. This was accomplished by subparagraph 3 of section 50, (par. 174,) where it was provided "in case a counterclaim is filed, the judgment shall be so drawn as to protect the interests of both parties, and subject to rules, no execution shall be issued until all the issues in the case have been determined by the judgment, except by leave of court." Subparagraph 3 of section 50 dis-

regards the distinctions that previously existed in reference to filing of cross bills, setoffs and recoupments and which were carried into the entry of judgments where such cross demands had been filed. The statute directs that judgments on counterclaims shall be entered, "to protect the interests of the parties."

Mechanic's liens were unknown to the common law, (*Hoier* v. *Kaplan,* 313 Ill. 448,) and were not allowable in courts of equity. (*Schmidt* v. *Anderson,* 253 Ill. 29.) They are creatures of the statute, but it is not necessary in this case to determine whether petitioner's action to enforce the lien should be regarded as a statutory action or an action at law, or one in equity, for, whatever it may be, we find that Waite's counterclaim was not of the same character. There is no basis in this suit to hold that the counterclaim should be treated as related to petitioner's original action or dependent upon it.

The conduct of the parties in stipulating that no claim was made for lien against Waite indicates that the parties considered that Waite's counterclaim was an action separate and independent from petitioner's claim for lien. Furthermore, petitioner's varied attempts to have the judgment of November 9, 1943, reviewed as a final, appealable judgment is evidence that it considered the judgment was in no way related to the judgment entered on the claims for lien.

In the *Bristow case,* the minutes entered November 9, 1943, were declared to be a judgment against the Bradford Supply Company, and the implications arising out of the opinion in that case and the *Bradford Supply case* indicate that it was considered to be a final and appealable judgment.

Under subparagraph 3 of section 50, the court had the power to enter a judgment on the counterclaim to protect the interests of both parties and we find that the judgment entered was in accord with the statute.

528

Petitioner is entitled to have a decree or judgment entered on its claim for lien as shown by the minutes on the judge's docket under date of September 11, 1943, but respondent Bradley agrees to the signing of such a decree when presented. The writ will not issue to compel the doing of an act which the person sought to be coerced admits on the record he is willing to do without coercion. *People ex rel. Bruce* v. *Dunne,* 258 Ill. 441.

*Writ denied.*