DUDEK, INC., Plaintiff and Counterdefendant-Appellee, v. SHRED PAX CORPORATION, Defendant and Counterplaintiff-Appellant.

First District (2nd Division)   No. 1—88—3728

Opinion filed March 30, 1990.

Wildman, Harrold, Allen & Dixon, of Chicago (Michael Dockterman and Michael Bolton, of counsel), for appellant.

Bell, Boyd & Lloyd, of Chicago (Edwin Thomas, Fredrick Bates, and Cathy Furda, of counsel), for appellee.

JUSTICE HARTMAN delivered the opinion of the court:

From the circuit court's granting of plaintiff/counterdefendant's (plaintiff's) section 2—1401 (Ill. Rev. Stat. 1985, ch. 110, par. 2—1401) (section 2—1401) petition to vacate an order of dismissal for want of prosecution, defendant/counterplaintiff (defendant) appeals, claiming abuse of discretion in the vacatur.

In August of 1985, plaintiff filed a complaint alleging a breach of warranty against defendant, involving an industrial metal-shredding machine plaintiff purchased from defendant. When the complaint was filed, plaintiff was represented by the law firm Goldstein, Simon, Briskman, Briskman, Trinley & Lamb (Goldstein-Simon). Specifically, attorney Thomas Trinley was assigned to the case. Defendant's subsequent motion to strike and dismiss the complaint was granted, but plaintiff was given leave to and did file an amended complaint. After its motion to dismiss the first amended complaint was denied, defendant filed its answer and additionally brought a counterclaim against plaintiff for breach of contract, seeking the unpaid balance owed on the shredding machine.

Trinley left the Goldstein-Simon firm in early February, 1987. Patrick Lamb, another member of Goldstein-Simon, averred by affidavit that after Trinley's departure, plaintiff's file "was not formally reassigned to any other member" of the firm. On March 25, 1987, the case appeared on the court-generated calendar call; notice had been published in the Chicago Daily Law Bulletin one day earlier. Neither party appeared in court on that date. Both complaint and counterclaim were dismissed for want of prosecution. On April 23, 1987, with notice to plaintiff, defendant moved to vacate the dismissal of its counterclaim only, which the circuit court granted on May 15, 1987. Neither plaintiff nor its counsel appeared at that proceeding.

Goldstein-Simon then dissolved on October 1, 1987. Lamb and another partner from that firm formed Goldstein & Lamb, which continued to represent plaintiff in the instant case. Lamb swore that he was unaware of the March 25, 1987, dismissal of plaintiff's cause for want of prosecution at the time that order was entered.

At another calendar call, scheduled for March 29, 1988, and published in the Chicago Daily Law Bulletin on the previous day, plaintiff again failed to appear. Defendant informed the court of the status of the case as well as of the dismissal of plaintiff's action for want of prosecution a year earlier. Defendant then moved for default judgment on its counterclaim, asserting plaintiff had not filed any responsive pleadings thereto. The record indicates plaintiff had been served with notice of defendant's motion for default judgment.

On April 12, 1988, at the hearing on defendant's motion for default judgment on its counterclaim, Lamb appeared on behalf of plaintiff. According to Lamb's affidavit, he first discovered at this proceeding that plaintiff's action had been dismissed for want of prosecution. In response to defendant's counterclaim, plaintiff was allowed to file an answer, affirmative defenses, and set-offs. It enumerated six "affirmative defense and/or setoff" claims which essentially alleged the same facts as previously raised in its first amended complaint.[1]

Around August 2, 1988, Edwin C. Thomas of Bell, Boyd & Lloyd agreed to represent plaintiff, and on September 12, 1988, the court granted plaintiff's motion for substitution of attorneys. Also on September 12, Thomas filed a section 2—1401 petition to vacate the court's March 25, 1987, dismissal of plaintiff's claim for want of prosecution. The petition was supported by the affidavits of attorneys Lamb and Thomas, which chronicled the legal representation of plaintiff to that point. In response, defendant moved to dismiss plaintiff's petition.

At a hearing held November 22, 1988, on the section 2—1401 petition and related motion to dismiss, the circuit court repeatedly questioned plaintiff's counsel for facts demonstrating "excusable neglect" to support a finding of due diligence, but did not deem satisfactory any of the reasons provided. The court nevertheless invoked its equitable powers and granted plaintiff's petition, based on the existence and viability of defendant's counterclaim, reasoning:

> "[T]he fundamental issue here is the fact there is ongoing litigation. I look at what they have done. They have dropped the ball, so to speak. But the point is in a case that's an ongoing piece of litigation in terms of fundamental fairness, they are picking up the ball in a case that already has a ball in it. It's just a question of whether you call it an affirmative defense or a complaint.
>
> * * *
>
> Based upon the pleadings and the peculiar circumstances of this particular case, the Court pursuant to the motion to vacate the dismissal for want of prosecution under [section] 2—1401 grants the motion to vacate."

From that ruling, defendant appeals.

Defendant's sole contention on appeal is that the circuit court abused its discretion in granting plaintiff's section 2—1401 petition to

---

[1]Defendant's counterclaim against plaintiff requests $73,280 plus interest; plaintiff's "setoff" against defendant asks for $270,450.

vacate the dismissal of the first amended complaint for want of prosecution.

■ To warrant relief under section 2—1401, the petitioner must "affirmatively set forth specific factual allegations" demonstrating the existence of the following elements: (1) a meritorious defense or claim; (2) due diligence in presenting this defense or claim in the original action; and (3) due diligence in filing the petition for relief. (*Smith v. Airoom, Inc.* (1986), 114 Ill. 2d 209, 220-21, 499 N.E.2d 1381 (*Airoom*).) To be entitled to relief, the petitioner must show that, through no fault or negligence of its own, an error of fact or a valid claim was not raised in the circuit court at the time the order or judgment was entered. (*Kaput v. Hoey* (1988), 124 Ill. 2d 370, 378, 530 N.E.2d 230.) Further, the question of whether a section 2—1401 petition should be granted lies within the sound discretion of the circuit court, which can be disturbed on review only upon a showing of abuse thereof. *Airoom*, 114 Ill. 2d at 221.

■ To establish due diligence, a petitioner must have a reasonable excuse for its failure to act within an appropriate time. (*Airoom*, 114 Ill. 2d at 222; *First National Bank v. Mattoon Federal Savings & Loan Association* (1988), 175 Ill. App. 3d 956, 960, 530 N.E.2d 666.) Here, plaintiff's allegations of due diligence, contained in its section 2—1401 petition and supporting affidavits, state it originally was represented by Trinley of Goldstein-Simon; Trinley later "left the employ" of that firm; Goldstein-Simon failed to reassign the case to another member of the firm; shortly after Trinley's departure, the dismissal order was entered against plaintiff; and the firm dissolved without knowledge of the dismissal against plaintiff. According to Lamb's affidavit, the dismissal was entered against plaintiff due to inadvertence and not his negligence or that of Goldstein-Simon.

■ The foregoing presents neither a reasonable excuse for plaintiff's failure to act within an appropriate time, nor evidence of due diligence. Goldstein-Simon never assigned plaintiff's case to another attorney when Trinley left the firm, which then dissolved, apparently without any further consideration of the matter. Nor did plaintiff's new counsel after the dissolution actively pursue the matter. Lamb's affidavit states that the firm of Goldstein & Lamb, which assumed the representation of plaintiff after the dissolution, did not learn of the dismissal until April 1988, more than one year after its entry. Despite Lamb's undisputed knowledge of the dismissal by April 12, 1988, the section 2—1401 petition was not filed until September 12, 1988, five months later, when plaintiff was represented by Bell, Boyd & Lloyd. Due diligence is absent in both presenting plaintiff's claim in the orig-

inal action and in filing the section 2—1401 petition. Responsibility of plaintiff's attorneys for the dismissal does not alter this conclusion; plaintiff should have followed the progress of its case. Section 2—1401 will not operate to relieve plaintiff of the consequences of its counsel's negligence. See *Kaput v. Hoey*, 124 Ill. 2d at 383; *Dassion v. Homan* (1987), 161 Ill. App. 3d 141, 145, 514 N.E.2d 41.

● 4 Even if it was not diligent, plaintiff claims entitlement to equitable relief, because section 2—1401 engenders equitable powers of the circuit court, which ought to prevent enforcement of default judgments when unfair, unjust, or unconscionable. (*Airoom*, 114 Ill. 2d at 225.) Where required by justice and good conscience, a default judgment may be vacated under section 2—1401 although the due diligence requirement has not been satisfied. *Airoom*, 114 Ill. 2d at 225; *First National Bank of Mattoon*, 175 Ill. App. 3d at 961.

Acknowledging former counsel's errors, plaintiff nevertheless contends that granting its petition would achieve a just result. As in *Airoom*, there is no suggestion in the instant case of deception, fraud or unconscionable behavior by defendant entitling plaintiff to equitable relief (*Airoom*, 114 Ill. 2d at 228-29); rather, plaintiff's position is the result of its own inexcusable mistake. (*Falcon Manufacturing Co. v. Nationwide Brokers, Inc.* (1984), 123 Ill. App. 3d 496, 500, 462 N.E.2d 562.) None of the recognized equitable principles are implicated in the case at bar.

■ Plaintiff's inability to demonstrate due diligence or entitlement to equitable relief required denial of its section 2—1401 petition to vacate the dismissal. (See *Falcon Manufacturing Co.*, 123 Ill. App. 3d 496.) The circuit court mentioned what it thought to be a seemingly minor consequence of denying the petition under the circumstances—plaintiff instead would be a counterdefendant with "affirmative defenses" rather than a "complaint"—and made its ruling on that basis alone. The equitable powers of the circuit court are not unlimited; the scope of section 2—1401 relief must not be overbroadened to such an extent as to dilute the principles of equity and an ordered concept of justice. *Airoom*, 114 Ill. 2d at 227; *First National Bank*, 175 Ill. App. 3d at 962.

■ Plaintiff's final contention is that a section 2—1401 petition to vacate a judgment should be allowed when it is not unreasonable to compel the litigants to go to trial on the merits. (*Uptown Federal Savings & Loan Association v. Kotsiopoulos* (1982), 105 Ill. App. 3d 444, 434 N.E.2d 476.) It suggests that a "just result" is achieved by allowing "the possibility of affirmative recovery for the prevailing party," whether plaintiff or defendant, since the issues will have to

be litigated anyway. Its argument, however, that fundamental fairness demands the petition for relief be allowed "yields more easily to the proposition that courts cannot be indifferent to litigants' disregard for procedural rules." (See *Chovan v. Floor Covering Associates, Inc.* (1987), 159 Ill. App. 3d 447, 450, 512 N.E.2d 801.) Here, plaintiff's problems resulted from its inexcusable failure to exercise due diligence in presenting its original claim and in filing its section 2—1401 petition; whether the ultimate effect on future proceedings will be great or small, plaintiff is not entitled to relief under section 2—1401.

Plaintiff claims "it would not be fair to *** [plaintiff] to have to defend *** [defendant's] counterclaim without the possibility of affirmative relief and it would not be unfair to *** [defendant] to have to defend *** [plaintiff's] claims at the risk of a money judgment in favor of *** [plaintiff because] *** a full-blown trial on the merits is going to take place *** [by virtue of plaintiff's] affirmative defenses and its claim for set-offs." If plaintiff is correct, its claim for setoffs may exceed the amount sought by the counterclaim, which, if proven, would provide for all the affirmative relief it may be entitled to receive. See Ill. Rev. Stat. 1987, ch. 110, par. 2—608; Ill. Ann. Stat., ch. 110, par. 2—608, Historical and Practice Notes, at 181-84 (Smith-Hurd 1983).

■ For the foregoing reasons, we find an abuse of discretion in the circuit court's vacatur of the dismissal herein and we reverse and remand for proceedings in consonance with the views expressed in this opinion.

Reversed and remanded.

DiVITO, P.J., and SCARIANO, J., concur.