DUDEK, INC., Plaintiff and Counterdefendant-Appellee and Cross-Appellant, v. SHRED PAX CORPORATION, Defendant and Counterplaintiff-Appellant and Cross-Appellee.

First District (2nd Division)   No. 1—92—0444

Opinion filed September 28, 1993.

Wildman, Harrold, Allen & Dixon, of Chicago (Michael Dockterman, Brian W. Lewis, and Alan J. Rubenstein, of counsel), for appellant.

Bell, Boyd & Lloyd, of Chicago (Edwin C. Thomas III and Cathy D. Furda, of counsel), for appellee.

JUSTICE HARTMAN delivered the opinion of the court:
This case was previously considered on appeal by this court. (*Dudek, Inc. v. Shred Pax Corp.* (1990), 196 Ill. App. 3d 720, 554 N.E.2d 1002 (*Dudek I*).) The sole contention resolved in *Dudek I* was whether the circuit court abused its discretion in granting plaintiff Dudek, Inc.'s section 2—1401 petition (Ill. Rev. Stat. 1985, ch. 110, par. 2—1401 (now 735 ILCS 5/2—1401 (West 1992)) (section 2—1401)) to vacate the dismissal for want of prosecution of its first amended complaint. We reversed and remanded for further proceedings on Shred Pax' subsisting counterclaim, Dudek's answer thereto and "affirmative defenses" and "setoffs."

In this appeal, Shred Pax challenges the circuit court's granting of partial summary judgment in Dudek's favor on Shred Pax' counterclaim and seeks reversal and remandment for a prove up of damages. Dudek cross-appeals, seeking reversal of the circuit court's granting of summary judgment as to Dudek's affirmative defenses and setoffs, and the court's denial of Dudek's entitlement to any affirmative relief. The issues raised for review are whether the circuit court erroneously (1) construed the terms of the contract between the parties; (2) failed

to find waiver of Dudek's affirmative defense that final payment was subject to a satisfactory approval test; and (3) in the cross-appeal, whether the court erred in holding that Dudek's action for setoffs seeking affirmative relief are barred.

The underlying facts, as gleaned from deposition testimony and documentary evidence, are as follows.

Dudek is in the scrap metal processing business. Shred Pax manufactures metal-shredding machines for use in that industry. Around 1983, Dudek investigated the possibility of purchasing a shredding machine, the function of which was to shred particular materials. Dudek sought to increase the production and safety of its scrap metal operations. William Dudek (William), Dudek's president, visited Shred Pax' premises where he met with Al Kaczmarek, Shred Pax' president. William had told Kaczmarek that Dudek needed to shred automobile bodies and parts. Kaczmarek gave William pictures of a Shred Pax Model AZ-80 as it shredded various items, including almost an entire car. There is deposition testimony to the effect that Kaczmarek represented the AZ-160 as capable of shredding the materials Dudek wanted shredded; however, there is contrary deposition testimony that Kaczmarek told William that Dudek would need a Shred Pax Model AZ-300 or "even an AZ-300 cross shredder." Kaczmarek also told Dudek that an AZ-160, an apparently less powerful unit, was not guaranteed as suitable for the materials it wanted to shred, as expressed in a letter dated October 18, 1984, sent to Dudek.

Dudek purchased the AZ-160. The proposal for the AZ-160 lists the option that the AZ-20 shredder owned by Dudek could be used as a trade-in, with a credit for $26,800. A letter written by Shred Pax accompanied the proposal. The proposal and letter each contained installment payment schedules, which are at issue here and will be discussed in detail later in this opinion. The letter also stated that Shred Pax would make changes on the system without charge, in order to make the AZ-160 "workable." The letter, as part of the contract, was signed by Dudek and Shred Pax through their representatives. The total cost of the machine was $248,080.

Dudek made the first installment payment when the contract was signed; the second installment payment when the machine was delivered, set up and put in operation; but Dudek never made the third installment, according to deposition testimony, because no approval test was made. There was further deposition testimony that the concept of an approval test was not discussed between Dudek's and Shred Pax' representatives; that the second payment was made despite the absence of an approval test.

In August of 1985, Dudek filed a complaint alleging a breach of warranty against Shred Pax, involving the AZ-160 industrial metal-shredding machine. Shred Pax' subsequent motion to strike and dismiss the complaint was granted, but Dudek was given leave to and did file an amended complaint. After its motion to dismiss the first amended complaint was denied, Shred Pax filed its answer and additionally brought a counterclaim against Dudek for breach of contract, seeking the unpaid balance owed on the shredding machine.

On March 25, 1987, the case appeared on the court-generated calendar call. Notice had been published in the Chicago Daily Law Bulletin one day earlier. Neither party appeared in court on that date. Both complaint and counterclaim were dismissed for want of prosecution. On April 23, 1987, with notice to Dudek, Shred Pax moved to vacate the dismissal of its counterclaim only, which the circuit court granted on May 15, 1987.

At another calendar call, scheduled for March 29, 1988, and published in the Chicago Daily Law Bulletin on the previous day, Dudek again failed to appear. Shred Pax informed the court of the status of the case as well as of the dismissal of Dudek's action for want of prosecution one year earlier. Shred Pax then moved for a default judgment on its counterclaim, asserting that Dudek had not filed any responsive pleadings thereto.

On April 12, 1988, at a hearing on Shred Pax' motion for default judgment on its counterclaim, Dudek's counsel appeared. According to his affidavit, he first discovered at this proceeding that Dudek's action had been dismissed for want of prosecution. In response to Shred Pax' counterclaim, Dudek was allowed to file an answer, and what it called "affirmative defenses and/or setoffs."

On September 12, 1988, the court granted Dudek's motion for substitution of attorneys. Also on September 12, Dudek filed a section 2—1401 petition to vacate the court's March 25, 1987, dismissal of Dudek's complaint for want of prosecution. In response, Shred Pax moved to dismiss Dudek's petition. At a November 22, 1988, hearing, the court granted Dudek's section 2—1401 petition.

Shred Pax appealed, contending that the court abused its discretion in granting Dudek's section 2—1401 petition. On appeal, Dudek claimed unfairness if it was required to defend against Shred Pax' counterclaim without the possibility of affirmative relief; however, it would not be unfair to require Shred Pax to defend against Dudek's claim at the risk of a money judgment in favor of Dudek, because a full-blown trial on the merits would take place by virtue of Dudek's affirmative defenses and its claim for setoffs. This court reversed and

remanded. Although the only issue on appeal determined by this court in *Dudek I* was whether the section 2—1401 petition should have been allowed, in doing so we observed that "[i]f [Dudek] is correct [concerning the need for a full-blown trial on the merits], its claim for setoffs may exceed the amount sought by the counterclaim, which, if proven, would provide for all the affirmative relief it may be entitled to receive. See Ill. Rev. Stat. 1987, ch. 110, par. 2—608; Ill. Ann. Stat., ch. 110, par. 2—608, Historical and Practice Notes, at 181-84 (Smith-Hurd 1983)." *Dudek I*, 196 Ill. App. 3d at 726.

On remand, Shred Pax moved for summary judgment with respect to Dudek's affirmative defenses and setoffs. Shred Pax claimed that this court's ruling bars Dudek's setoffs and affirmative defenses and that equity and the future utility of section 2—1401 mandate their preclusion. Dudek moved for partial summary judgment with respect to Shred Pax' counterclaim.

The circuit court granted both parties' motions on December 20, 1991, from which Shred Pax appeals and Dudek cross-appeals, as first noted.

I

Shred Pax contends that the court abused its discretion in granting Dudek's motion for partial summary judgment because (1) the contract between the parties did not include an approval test; (2) even if the court properly considered extrinsic evidence, its decision should be reversed as against the manifest weight of the evidence; and (3) Dudek waived the argument that the machine did not pass an approval test.

A

The circuit court found that a contract between the parties existed, consisting of a letter dated November 9, 1984, prepared by Shred Pax and executed by both parties; as well as an enclosed proposal, identified as the "November 9, 1984 proposal," and a letter dated October 18, 1984. The November 9, 1984, *letter* provides that payment would be made as follows:

"1/3 with the order, *1/3 upon completion of the machine*, and 1/3 thirty days after installation of the machine." (Emphasis added.)

The court added that the November 9, 1984, *proposal* provided for payment in different terms:

"1/3 with order, *1/3 on approval test*, 1/3 30 days after delivery." (Emphasis added.)

The court found that Dudek paid one-third upon ordering the machine, and another one-third at a later date, but that an approval test was never run. The court held that the language of the payment terms in the November 9 letter and November 9 proposal is conflicting and ambiguous: "The letter says '1/3 payment on completion of the machine' and does not define what 'completion' means. In contrast, the proposal says '1/3 on approval test.' Where the terms are ambiguous, the contract is construed against the drafter of the language." Accordingly, because Shred Pax drafted the contract, the court found that the "1/3 on approval test" was the applicable term. The contract was construed against Shred Pax, and because it was undisputed that no approval test was run, the court found that Dudek did not owe the one-third remaining payment.

■ Shred Pax urges that the court erroneously construed the contract because the payment terms in the letter modified the earlier payment terms contained on the proposal pages and, therefore, did not require an approval test before payment was due. This contention was never made at the trial court level and cannot be considered on appeal for the first time. (*In re Marriage of Rodriguez* (1989), 131 Ill. 2d 273, 279, 545 N.E.2d 731.) Even were we to consider this argument on its merits, Shred Pax' position is nevertheless without support.

Shred Pax theorizes that the terms contained in the letter were being *added* to the proposal language, which were allegedly accepted by signing the letter. Shred Pax calls this a "modification" of the terms contained on the proposal pages. As Dudek contends, the word "modification" means change (*Chicago College of Osteopathic Medicine v. George A. Fuller Co.* (7th Cir. 1985), 776 F.2d 198, 208); however, the language of the November 9 letter does not say that the terms set forth are intended to modify or change the terms contained in the proposal (*e.g.*, "1/3 on approval test" becomes "1/3 upon completion of the machine"). The letter says, instead, *"plus the items added* to our quotation." (Emphasis added.) By "adding" rather than modifying, Shred Pax' documents now show two different terms for the same mid-third payment, thereby confusing the intent.

Nothing in the November 9 letter suggests that the "completion" provision was intended to cancel, change, modify, or supersede the "approval" provision in the proposal. Indeed, directly above the signature line, showing acceptance by both parties, Shred Pax specifically states "Proposal #84—400—440X," containing the "approval" language, as the document being "accepted" by both parties. If a mere ambiguity was created by Shred Pax in its documents, the circuit

court would ordinarily construe the writings against Shred Pax. (*Duldulao v. Saint Mary of Nazareth Hospital Center* (1987), 115 Ill. 2d 482, 493, 505 N.E.2d 314; *Turner Construction Co. v. Midwest Curtainwalls, Inc.* (1989), 187 Ill. App. 3d 417, 421, 543 N.E.2d 249.) Here, however, as Dudek insists, there are two entirely different sets of payment terms, not an ambiguity within a single payment schedule. This conflicting evidence as to what the parties intended by their agreement required a trial on its merits, as discussed further in the next section of this opinion.

B

Shred Pax avers that even if the court properly considered extrinsic evidence, its decision should be reversed as against the manifest weight of the evidence.

██ Shred Pax maintains that Robert Dudek (Robert), who signed the contract in Dudek's behalf, understood that an approval test did not apply. As support for this assertion, Shred Pax points to Robert's deposition testimony, that the second payment was made after completion of the machine; he knew the third payment was due 30 days after installation of the machine; he never discussed the concept of an approval test with Shred Pax' representatives; and he signed the contract for Dudek nevertheless.

Robert explains, however, that the third installment was never paid because "the machine never worked"; it did not run sufficiently well enough to reach the stage requiring approval and final payment. He detailed a failed gear box, failed spacers, failed knives, failed bearing, failed shaft, failed kickout system, and failed gears to support his conclusion. Based upon the foregoing, Dudek maintains, its actions were consistent with the contract's requirement that an approval test was to be run.

Clearly, questions of fact emerge from this record which are not amenable to disposition by summary judgment. The function of the summary judgment procedure is to ascertain the existence or absence of material, triable issues of fact, not to substitute for a trial of such issues. Although the summary judgment procedure is salutary, it is a drastic means of disposing of litigation. The procedure is an aid to the expeditious disposition of a lawsuit, but it may be allowed only when the moving party's right to such judgment is free and clear from doubt as a matter of law. (*Loyola Academy v. S & S Roof Maintenance, Inc.* (1992), 146 Ill. 2d 263, 271, 586 N.E.2d 1211; *Montes v. Hawkins* (1984), 126 Ill. App. 3d 419, 423, 466 N.E.2d 1271.) As we noted in *Montes*:

"Summary judgment is recognized as a salutary procedure in the administration of justice [citation], but must be cautiously granted so that the respondent's right to trial is not usurped in the presence of material evidentiary conflicting facts and inferences. The function of the procedure is to determine the existence or absence of triable issues of fact, not to try them. [Citations.] The moving party for summary judgment must affirmatively show a clear legal right thereto, free from doubt. If any facts upon which reasonable persons may disagree are identified, or inferences may be fairly drawn from those facts leading to differing conclusions, the circuit court must deny the motion and direct [that] the resolution of those facts and inferences be made at trial. [Citations.] When an agreement contains material terms capable of being understood in more than one sense and pleadings and affidavits conflict as to their meaning or are insufficient as bases upon which to determine their meaning as a matter of law, the circuit court must resort to an evidentiary hearing, rather than summary judgment proceedings, so that the parties may present their respective positions at trial as to the true intent ***." *Montes*, 126 Ill. App. 3d at 423-24.

In the present case, the true intent of the parties was in doubt; the deposition testimony presented sufficient evidence upon which a trier of fact could find for either party, depending upon the weight it should be given. *Franks v. North Shore Farms, Inc.* (1969), 115 Ill. App. 2d 57, 68-69, 253 N.E.2d 45; see *T D C Development Corp. v. First Federal Savings & Loan Association* (1990), 204 Ill. App. 3d 170, 178, 561 N.E.2d 1142.

Summary judgment was improperly granted as to the effect to be given the extrinsic evidence under these circumstances and must be reversed and remanded for trial.

## C

Finally, Shred Pax maintains that Dudek has waived its right to an approval test in any event, either by making the approval test payment or making it evident that no such test was necessary.

■ A waiver need not be expressly made, but may be implied. (*Whalen v. K mart Corp.* (1988), 166 Ill. App. 3d 339, 343, 519 N.E.2d 991, *appeal denied* (1988), 121 Ill. 2d 587, 526 N.E.2d 841.) The determination as to what facts are sufficient to constitute waiver is a question of law (*Whalen*, 166 Ill. App. 3d at 343); however, the existence of such facts in a given case is a question of fact to be de-

cided by the fact finder. *Aetna Life Insurance Co. v. Sanford* (1902), 200 Ill. 126, 130, 65 N.E. 661; *Baxter v. Metropolitan Life Insurance Co.* (1925), 318 Ill. 369, 371-72, 149 N.E. 243; *Business Development Services, Inc. v. Field Container Corp.* (1981), 96 Ill. App. 3d 834, 840, 422 N.E.2d 86.

Shred Pax' waiver argument is based upon Dudek having tendered payment which was due upon completion of the alleged approval test, Robert's testimony that the second payment was due upon an approval test, and utilization of the AZ-160 for a period of time without Dudek having told Shred Pax that an approval test had not been made. Kaczmarek, Shred Pax' president, testified that Shred Pax would not further service the machine until an additional payment was made. The record is unclear as to when Kaczmarek made that statement, with respect to the payments made. Dudek asserts it made the second installment because of this situation, although not admitting the machine was approved. Dudek claims to have made the payment in good faith, expecting Shred Pax to live up to its obligation to make the machine workable and did not have the requisite intent to have waived its contract rights. In contrast, Dudek points to Kaczmarek's deposition testimony that he knew from the beginning that the AZ-160 could not fulfill Dudek's requirements; he expected the machine to break, but did not tell Dudek's representatives of his own expectations because it was his "objective to sell them a piece of equipment."

The circuit court found that the sequence of the payments did not necessarily indicate that payments were due in that order in time. The court believed that the second payment was conditioned upon the happening of the approval test. Accordingly, the court found that Shred Pax did not show that Dudek's second payment was made in consideration of the approval test and that Shred Pax offered no other facts to show otherwise that Dudek voluntarily relinquished its known right to require the approval test.

As noted in the preceding point, summary judgment should not have been entered upon this state of conflicting versions of the facts, but the issue should have been submitted for trial before a fact finder. We reverse and remand for trial on this point as well.

## II

Dudek, on cross-appeal, contends that the circuit court abused its discretion in granting Shred Pax' motion for summary judgment, which permits Dudek to utilize its setoffs as affirmative defenses, but not for affirmative relief.

■ This court in *Dudek I* held only that the circuit court abused its discretion in vacating its dismissal of Dudek's complaint, due to Dudek's lack of due diligence both in presenting its original claim and in filing its section 2—1401 petition. Although we observed that "[i]f [Dudek] is correct [concerning the need for a 'full-blown' trial], its claim for setoffs may exceed the amount sought by the [Shred Pax] counterclaim, which, if proven, would provide for all the affirmative relief it may be entitled to receive" (*Dudek I*, 196 Ill. App. 3d at 726), we made no finding as to the viability of Dudek's affirmative defenses and setoffs.

Exacerbating an already unnecessarily complicated situation, Dudek sought relief in a document denominated "affirmative defenses and/or setoffs." Dudek's asserted affirmative defenses go beyond merely attempting to defeat Shred Pax' claim, however; Dudek seeks affirmative relief above and beyond defenses to that claim. In essence, Dudek's so-called "affirmative defenses and/or setoffs" are counterclaims as contemplated by section 2—608 of the Code of Civil Procedure (Code) (Ill. Rev. Stat. 1989, ch. 110, par. 2—608 (now 735 ILCS 5/2—608 (West 1992)) (section 2—608)). Under section 2—613(d) of the Code (Ill. Rev. Stat. 1989, ch. 110, par. 2—613(d) (now 735 ILCS 5/2—613(d) (West 1992))), Dudek was afforded the right to plead "any defense which by other affirmative matter seeks to avoid the legal effect of or defeat the cause of action set forth in the complaint." Counterclaims differ from affirmative defenses in that counterclaims seek affirmative relief whereas affirmative defenses attempt to defeat a plaintiff's (here counterclaimant's) cause of action. (*Wilson v. Tromly* (1949), 404 Ill. 307, 309-10, 89 N.E.2d 22; *Benckendorf v. Burlington Northern R.R.* (1983), 112 Ill. App. 3d 658, 662, 445 N.E.2d 837.) Plaintiff did not lose the right to its claim for setoffs by failing to plead them explicitly as counterclaims. (*Young Men's Christian Association v. Midland Architects, Inc.* (1988), 174 Ill. App. 3d 966, 971, 529 N.E.2d 288.) The affirmative relief sought through Dudek's setoffs will be treated as counterclaims for purposes of this appeal.

It will be helpful at this juncture to review the posture of this case, upon reversal and remandment in *Dudek I*. Transmuted from the position of defendant-counterplaintiff, Shred Pax functionally became plaintiff. Dudek's position essentially changed from plaintiff-counterdefendant to defendant. By holding as we did in *Dudek I*, Dudek was denied the right to proceed as plaintiff in the controversy and thereby lost whatever advantage it would have possessed with the attendant control over the direction and progress of the litigation, the right to open and close before the fact finder, as well as other po-

tential primacies. Of critical interest is the fact that Shred Pax thereafter controlled these aspects of the litigation. Had Shred Pax so desired, for example, the lawsuit between the parties could have been terminated upon dismissal of Dudek's amended complaint and action. With no complaint, there could have been neither affirmative defenses nor a counterclaim pleading setoffs. The Shred Pax counterclaim kept the litigation alive and breathed new life into what otherwise would have been a dead issue.

Dudek, the previous plaintiff and now defendant, had filed its setoffs against the Shred Pax counterclaim, which it was entitled to do under section 2—608(a). Section 2—608 requires that setoffs, recoupments, cross-bills and other similar matters be denominated counterclaims, and they become part of the answer. It is significant that Dudek's affirmative defenses-setoff document has been on file since April of 1988. On remand, neither party sought to amend its pleadings. Dudek's setoffs alleged essentially the same facts as previously raised in its stricken complaint, articulating six separate actions for breach of implied warranty of merchantability, breach of warranty of fitness for particular purpose and rescission, all concerning the same transaction involving the same shredder. No matters extrinsic to the transaction and the shredding machine were pled.

In earlier cases, defendants have been allowed to plead in crossactions called recoupments that they have been injured by plaintiffs' breaches of other parts of the same contract on which the plaintiffs' actions were founded and damages could be so mitigated. (*Olin Mathieson Chemical Corp. v. J.J. Wuellner & Sons, Inc.* (1966), 72 Ill. App. 2d 488, 492, 218 N.E.2d 823.) Setoffs were considered counterdemands arising out of transactions extrinsic to the actions being presented (*General Motors Acceptance Corp. v. Vaughn* (1934), 358 Ill. 541, 548, 193 N.E. 483; *Peterson v. Iris Theatre Co.* (1920), 218 Ill. App. 416, 419-20). The supreme court in *People ex rel. Bradford Supply Co. v. Circuit Court of Pulaski County* (1946), 393 Ill. 520, 66 N.E.2d 420 (*Bradford*), analyzed section 38 of the Civil Practice Act (Ill. Rev. Stat. 1945, ch. 110, par. 162), predecessor to section 2—608, in this regard and observed:

"Section 38 of the Civil Practice Act (Ill. Rev. Stat. 1945, chap. 110, par. 162,) provides that subject to rules 'any demand by one or more defendants against one or more plaintiffs, or against one or more co-defendants, whether in the nature of set-off, recoupment, cross-bill in equity or otherwise, and whether in tort or contract, for liquidated or unliquidated dam-

ages, or for other relief may be pleaded as a cross-demand in any action.'

*The statute is broad and designed to extend the filing of counterclaims to include subjects which were not permitted to be filed by setoff, recoupment or cross bill under the former practice. There is no requirement of statute that the original demand and the counterclaim shall be of the same character. They may be legal, equitable, or both. Nor is it necessary to observe the distinction that formerly existed as to recoupment, which required that the demand should arise out of the same transaction as plaintiff's demand. Under this statute, counterclaims may be filed by a defendant against the plaintiff or a codefendant without regard to the effect it may have upon plaintiff's demand.*" (Emphasis added.) (*Bradford*, 393 Ill. at 526.)

(See also *Olin Mathieson Chemical Corp.*, 72 Ill. App. 2d at 492.) Whether recoupment only to the extent of the opposing claims or setoffs exceeding the original claim, both are now considered counterclaims which may be filed by a defendant against a plaintiff "without regard to the effect it may have upon plaintiff's demand." *Bradford*, 393 Ill. at 526.

Shred Pax moved for summary judgment on Dudek's setoffs filed against the Shred Pax countercomplaint, arguing that Dudek's claims were not affirmative defenses, but were setoffs under section 2—608(a). The circuit court found that because Dudek's complaint seeking affirmative relief on its claims is barred, Dudek's claim for affirmative relief by setoff on the same claims, "which is really a counterclaim, is barred," citing *Reinhard v. Reinhard* (1958), 19 Ill. App. 2d 223, 153 N.E.2d 285 (abstract of opinion) (*Reinhard*).

The circuit court correctly determined that *Dudek I* did not bar Dudek from pursuing its affirmative defenses against Shred Pax. The circuit court erroneously held, however, that Dudek was not entitled to the affirmative relief for which it prayed in its claim for setoffs, about $270,000, in contrast to Shred Pax' initial counterclaim for approximately $70,000. By virtue of being confronted by the Shred Pax claim, Dudek, which never had its own claims adjudicated on their merits, should have been allowed to pursue its own counterclaim for affirmative relief. (*Bradford*, 393 Ill. at 526.) We know of no authority which disallows a counterclaim cognizable under section 2—608 from rising to an amount greater than the claim being made and none has been cited to this court.

The circuit court held that plaintiff's claim for setoffs could not be maintained as an independent action under *Reinhard*. In *Reinhard*, the court recognized that equity has the power to allow or compel a setoff, but the claim for a setoff must be a recognized cause of action. A setoff was not allowed in *Reinhard* because the court found that defendant husband there had no right cognizable in the law to withhold alimony payments and later seek to reduce the arrearages by setting them off against earnings of his former wife. There is no question in the present case but that plaintiff's setoffs are cognizable causes of action. *Reinhard* is inapposite.

Shred Pax urges that if Dudek is allowed to assert its setoff claims, it would be sneaking through the backdoor its previously barred complaint. Moreover, Shred Pax avers, equity and the future utility of section 2—1401 mandate preclusion of Dudek's setoffs; to allow them would "gut" section 2—1401, which would result in more litigation fees for Shred Pax. Although Shred Pax may be required to expend more fees in litigation, we do not agree that Dudek is sneaking its complaint through the backdoor or that the principles of equity and the utility of section 2—1401 will be injured under these facts and circumstances.

The law has recognized, for example, in another context, that a case dismissed not on its merits may be resurrected through the filing by the other party its own action in the same controversy. (Ill. Rev. Stat. 1991, ch. 110, par. 13—207 (now 735 ILCS 5/13—207 (West 1992)) (section 13—207); *Pape v. Byrd* (1991), 145 Ill. 2d 13, 25-30, 582 N.E.2d 164; *In re Estate of Rice* (1987), 154 Ill. App. 3d 591, 593, 507 N.E.2d 78.) We recognize that this treatment of the problem is statutory, but the effect on the parties is the same. In both instances the parties have neglected to take prompt and attentive action. In the present case, Dudek's complaint was dismissed not through a statutory limitations lapse, but through a judicial administration diligence lapse. The legislature has addressed the equities of such circumstances through section 13—207, since limitations periods are statutory in nature. Dismissal for want of prosecution is within the realm of administering justice in which the courts have preeminent responsibility. The same arguments could be made in the limitations scenario as are made here by Shred Pax: that the revived action is coming through the backdoor, since it was barred at the frontdoor by the passage of time; that the initiating party (here Shred Pax) will be put to additional expense by virtue of the revived action; and that principles of equity will somehow become damaged. These arguments do not persuade in either situation. As stated in an earlier case under the

predecessor statute to section 13—207, to bar such a claim opened up by the other party initiating its own inquiry into the rights of the parties, involving the very same controversy, "would be most unjust and absurd." *Brown v. Miller* (1890), 38 Ill. App. 262, 264.

The importance of stability and finality of judgments to the administration of justice cannot be gainsaid. The predilection for finality, however, occasionally must give way to fundamental fairness and substantial justice where, as here, the circumstances weigh strongly in favor of the trial on its merits instead of an unyielding, if not punitive, adherence to an earlier disposition, particularly since the issues raised by each party concern the same contract, the same machine and, in all likelihood, the same witnesses and other evidence.

The damage anticipated by Shred Pax to the vitality of section 2—1401 is without support. In a thoughtful analysis of the predecessor to section 2—1401 (Ill. Rev. Stat. 1965, ch. 110, par. 72), Justice Charles H. Davis, then sitting in the Illinois Appellate Court, Second District, concluded:

> "It is well that the limits under which relief may be granted pursuant to Section 72 are not precisely defined and have not yet been plumbed. Such boundaries should be flexible to afford growth and development under the philosophy that the desire to achieve substantial justice, viewed in the perspective of the importance of the finality and stability of judgments, will indicate when relief from judgments may be granted.
>
> The capacity of the common law to preclude injustice, as developed through the provisions of Section 72, sustains the view that the genius and glory of the common law lies in its responsiveness to the existing realities of our dynamic and changing society and to its awareness of the value of stability and finality, without being irrevocably committed to outworn precedent." (Davis, *The Scope of Section 72 of the Civil Practice Act*, 55 Ill. B.J. 820, 830 (1967).)

We see no danger to the utility of section 2—1401 by virtue of allowing Dudek to pursue its setoffs under the circumstances of this case. The grant of summary judgment denying Dudek a hearing for affirmative relief on its setoffs must be reversed.

For the foregoing reasons, we reverse entry of summary judgment for Dudek and Shred Pax and remand for trial on the merits.

Affirmed in part; reversed in part and remanded.

SCARIANO and DiVITO, JJ., concur.